# STEVEN J. SHAPIRO, RICK STRIEB, and BARBARA PATRICK, Plaintiffs and Respondents,
## v.
# JEFFERSON COUNTY, MONTANA, a body corporate and politic; the BOARD OF COUNTY COMMISSIONERS of said county; and LEONARD WORTMAN, CHARLES NOTBOHM, and GLENNA OBIE, in their official capacities as County Commissioners of said county, Defendants and Appellants.

No. 96-005.
Submitted on Briefs May 30, 1996.
Decided September 6, 1996.
53 St.Rep. 848.
278 Mont. 109.
923 P.2d 543.

110

For Appellant: **Edmund F. Sheehy, Jr.**, Cannon & Sheehy, Helena.

For Respondent: **Steven J. Shapiro**, Attorney at Law, Clancy.

JUSTICE TRIEWEILER delivered the Opinion of the Court.

On August 17, 1995, Steven J. Shapiro, Rick Strieb, and Barbara Patrick (Plaintiffs) filed a petition for a writ of mandamus and prohibition and a petition for a declaratory judgment in the District Court for the Fifth Judicial District in Jefferson County. On September 15, 1995, the District Court issued an alternative writ of mandamus. Following a hearing, the District Court issued a peremptory writ of mandamus and prohibition in which it prohibited Jefferson County from paying or allowing Valerie Wilson to act as Jefferson County Attorney and in which it required the County to reopen the application process for the county attorney position. The Defendants appeal the court's issuance of the writ. We reverse the District Court.

On appeal, we address the issue of whether the District Court erred when it concluded that Jefferson County's appointment of Valerie Wilson as county attorney was void ab initio.

## FACTUAL BACKGROUND

Plaintiffs in this case are residents, electors, and taxpayers in Jefferson County. Defendants consist of Jefferson County, the Board of County Commissioners of Jefferson County, and three individual members of the Board of County Commissioners.

The population of Jefferson County is approximately 9,200. The office of county attorney in Jefferson County is a full-time, elected position. When a vacancy occurs in that position, it is the duty of the Jefferson County Commissioners to appoint a qualified attorney to fill the position until the next general election. See Section 7-4-2206, MCA.

On May 3, 1995, Richard Llewellyn, the duly elected and acting county attorney in Jefferson County, resigned his position. The Jefferson County Commissioners thereafter initiated a process to fill the vacancy created by Llewellyn's resignation. The Commissioners advertised the vacancy in several newspapers and other publications. They received a total of twenty-one applications for the position.

Prior to the application deadline, the Jefferson County Commissioners formed a selection committee to interview and narrow the list of candidates. The committee was composed of three County Commissioners, the Jefferson County Sheriff, the Justice of the Peace, the District Judge for Jefferson County, the Madison County Attorney, an Assistant Attorney General, and two private consultants. The committee narrowed the list of applicants to seven candidates and scheduled interviews for July 19, 1995.

Following the interviews, the selection committee narrowed the list of remaining applicants to Bridgitt Erickson, Robert Zenker, and Valerie Wilson. After an investigation into those candidates' backgrounds, the County Commissioners selected Valerie Wilson to fill the position of Jefferson County Attorney at a public meeting in Clancy on July 25, 1995. No one lodged an objection to Wilson's qualifications at that meeting. Wilson became a resident of Jefferson County on August 18, 1995. That same day she assumed office as the Jefferson County Attorney.

On August 17, 1995, Plaintiffs filed a petition for a writ of mandamus and prohibition and a petition for a declaratory judgment requesting the Fifth Judicial District Court to order the Defendants to rescind their decision to appoint Wilson as Jefferson County Attorney and to reopen the application process for that position. Plaintiffs claimed that based on § 7-4-2701, MCA, Wilson was not qualified to hold the position of Jefferson County Attorney because she had not been "admitted to the practice of law for at least 5 years prior to the date of election or appointment."

Following a hearing on November 24, 1995, the District Court issued an order in which it concluded that Wilson was not qualified to retain the position of Jefferson County Attorney because she had not been admitted to the practice of law for five years prior to her appointment. The District Court therefore concluded that Jefferson County's appointment of Valerie Wilson to fill the position of county attorney was void *ab initio*, but determined that Wilson's actions since she had assumed office could not be challenged because she had been acting as a *de facto* officer. The court issued a writ of mandamus to enjoin and prohibit Jefferson County from paying or allowing Wilson to act as the county attorney, and to require the County Commissioners to reopen the application process for that position.

Defendants filed a notice of appeal on January 2, 1996. On January 30, 1996, this Court issued an order staying the District Court's writ of mandamus pending the outcome of this appeal.

## DISCUSSION

■ On appeal, we address the issue of whether the District Court erred when it concluded that Jefferson County's appointment of Valerie Wilson as county attorney was void *ab initio*. We review a district court's conclusions of law to determine if they are correct. *Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

█ In this case, the District Court concluded that Valerie Wilson had not been "admitted to the practice of law for at least 5 years," as required by § 7-4-2701, MCA. The court therefore concluded that Wilson was not qualified to be appointed to the office of county attorney pursuant to the requirements of § 7-4-2701, MCA, and declared that the County Commissioners' appointment of Wilson to that position was void *ab initio*. On the basis of its conclusions, the court issued a writ of mandamus in which it ordered that Wilson be terminated from her position as Jefferson County Attorney and in which it required the Jefferson County Commissioners to re-open the application process for the appointment of a statutorily-qualified county attorney.

Section 7-4-2701, MCA, establishes statutory qualifications for county attorneys in counties with populations in excess of 30,000. That statute provides:

No person is eligible for the position of county attorney in counties which have a population in excess of 30,000 unless he is a citizen of the United States who has resided in the state 2 years immediately before taking office *and has been admitted to the practice of law for at least 5 years prior to the date of election or appointment.*

(Emphasis added.) Counties with populations of fewer than 30,000 may create a full-time county attorney position. In accordance with § 7-4-2706, MCA, however, those full-time county attorneys are subject to the statutory qualifications of § 7-4-2701, MCA:

In any county with a population of less than 30,000, the county commissioners may, upon the consent of the county attorney, on July 1 of any year by resolution establish the office of county attorney as a full-time position *subject to the provisions of 7-4-2701 and 7-4-2704.*

Section 7-4-2706(1), MCA (emphasis added).

Jefferson County has a population of 9,200; however, that county created a full-time county attorney position on July 1, 1986. In accordance with § 7-4-2706(1), MCA, therefore, the Jefferson County Attorney is subject to the qualifications of § 7-4-2701, MCA: (1) she must be a United States citizen; (2) she must have resided in Montana for two years immediately preceding her election or appointment to that office; and (3) she must have been admitted to the practice of law for at least five years prior to the date of her election or appointment to that office.

In this case, the District Court concluded that Valerie Wilson had not been "admitted to the practice of law for at least 5 years" prior to

her appointment to office on August 18, 1995. The court reasoned that Wilson had not been admitted to the practice of law, pursuant to § 7-4-2701, MCA, until October 8, 1991, when she was admitted to the Montana Bar. Therefore, the court concluded that Wilson "would not achieve the five years until October 8, 1996."

Although Wilson testified at the District Court hearing that she had begun practicing law as a student attorney in February 1990, and therefore had over five years of experience at the time of her appointment, the District Court discounted Wilson's experience as a student attorney. Specifically, the court stated:

> The court does not give Ms. Wilson credit for experience gained under the Montana Supreme Court "student practice" rule because that rule was intended only to apply to students who had not yet been admitted and who were under the supervision of a licensed attorney.

The Montana Student Practice Rule was adopted by this Court on April 30, 1975, and became effective on May 1, 1975. That rule provides that law students who are enrolled in an accredited law school, have completed two-thirds of the total credit hours required for graduation, and have been certified by the dean of the law school as being of good character and competent legal ability and as being adequately trained to perform as a legal intern, may practice under the Student Practice Rule. Students who are deemed eligible to practice under the Student Practice Rule may, subject to certain guidelines, appear in court or before any administrative tribunal in the state; prepare pleadings, briefs, abstracts, and other documents to be filed in trial or appellate courts in this state; advise, negotiate, and perform other appropriate legal services; and participate in oral argument before the Montana Supreme Court.

Section 37-61-201, MCA, designates who is considered to be practicing law in Montana. That statute provides:

> Any person who shall hold himself out or advertise as an attorney or counselor at law or who shall appear in any court of record or before a judicial body, referee, commissioner, or other officer appointed to determine any question of law or fact by a court or who shall engage in the business and duties and perform such acts, matters, and things as are usually done or performed by an attorney at law in the practice of his profession for the purposes of parts 1 through 3 of this chapter shall be deemed practicing law.

Section 37-61-201, MCA, does not require that one must be admitted to the State Bar of Montana in order to be "deemed practicing law"

in Montana. Therefore, a student attorney who "[appears] in any court of record or before a judicial body" or who "[engages] in the business and duties and performs such acts, matters, and things as are usually done or performed by an attorney at law in the practice of his profession," is clearly "deemed practicing law," pursuant to § 37-61-201, MCA.

At the district court hearing, Wilson testified that she had worked in the Missoula County Attorney's Office from February 1990 through June 1991 under the Student Practice Rule. Wilson testified that in her position as student attorney with that office, she had tried several cases in front of the Fourth Judicial District Court. In trying those cases, she testified that she had drafted complaints and court orders, interviewed witnesses, and performed direct and cross-examinations of witnesses. Wilson testified that her work was reviewed by a supervising attorney, but that

> [g]enerally, when I was assigned a case, it was mine to work. And I would not be supervised as to whether I would continue with the case or dismiss it. That would be my discretion.

Clearly, pursuant to § 37-61-201, MCA, Valerie Wilson had "[engaged] in the business and duties and perform[ed] such acts, matters, and things as are usually done or performed by an attorney at law in the practice of his profession," and was therefore deemed to be practicing law from February 1990 through June 1991.

Furthermore, since Wilson was entitled to engage in the practice of law only by virtue of this Court's order enacting the Student Practice Rule and only after she met the requirements of and was certified to practice pursuant to that rule, the Court's order did admit her to the practice of law. As a student, Wilson would not have been entitled to perform the business and duties usually associated with the practice of an attorney without the requisite certification pursuant to the Student Practice Rule. We hold, therefore, that this Court's order, which provides for the certification of student attorneys, combined with the dean of the law school's certification of students to act as student attorneys, provide the guidelines for "admission" of a student attorney to the practice of law. We therefore hold that Wilson was "admitted to the practice of law," pursuant to the requirements of § 7-4-2701, MCA, in February 1990. Therefore, Wilson had been admitted to the practice of law for "at least 5 years" when she assumed her duties as Jefferson County Attorney.

■ On appeal, however, Plaintiffs maintain that even if Wilson meets the qualifications set forth in § 7-4-2701, MCA, her appoint-

ment is still invalid because the Jefferson County Commissioners did not follow the statutory procedure for filling a vacancy in the office of county attorney. Specifically, Plaintiffs maintain that the County Commissioners did not follow the procedures set forth in § 7-4-2702, MCA, which provides, in relevant part:

(1) Whenever a vacancy in the office of county attorney shall arise in any county and there is no licensed attorney residing in said county who is eligible to be appointed to fill said vacancy, the board of county commissioners is authorized and has the power to employ special counsel from without the county, who shall be designated and officially known as the "acting county attorney" and who during said employment shall be vested with all the powers and shall perform all the duties of the county attorney, including the filing of all complaints, informations, and/or other proceedings for and in which the county or state may be a party and the prosecution and defense of the same to the same extent and with the same force and effect as if he were the regular qualified county attorney ....

(2) Whenever any licensed attorney shall establish residence in said county and become eligible to hold the office of county attorney, it shall be the duty of the board to appoint such attorney to fill said vacancy, and the employment of said special attorney shall thereupon cease.

Section 7-4-2702, MCA, provides a means by which county commissioners are authorized to appoint a temporary "acting county attorney," from without a county, to perform the duties of a "regular qualified county attorney." In this case, Wilson had become a resident of Jefferson County by the date on which she was sworn in as Jefferson County Attorney. Therefore, the County Commissioners did not appoint a temporary county attorney from outside Jefferson County, according to § 7-4-2702, MCA. They appointed a qualified licensed resident attorney to fill the vacancy in the position of the acting county attorney until the next general election. *See* § 7-4-2206, MCA. Because there was more than one qualified attorney to fill the vacancy, the County Commissioners clearly had the discretion to choose the replacement attorney. As we stated in *Horvath v. Mayor of the City of Anaconda* (1941), 112 Mont. 266, 273, 116 P.2d 874, 878:

The power to appoint carries with it a presumption that the appointing power is also, necessarily, discretionary. The determination of the appointing board or officer as to the qualifications of

applicants involves official discretion, and, when made fairly and in good faith, is final.

In this case, the Jefferson County Commissioners, in good faith, made the determination that Valerie Wilson was qualified to fill the position of Jefferson County Attorney and appointed her to that position. Based on our conclusion that Wilson was qualified to assume that position, pursuant to § 7-4-2701, MCA, and based on our conclusion that the Jefferson County Commissioners followed the proper procedure for the appointment of a replacement county attorney, pursuant to § 7-4-2206, MCA, we reverse the District Court's issuance of a writ of mandamus and remand this case to the District Court for entry of a judgment consistent with this opinion.

CHIEF JUSTICE TURNAGE, JUSTICES ERDMANN and LEAPHART concur.

JUSTICE GRAY, dissenting.

I respectfully dissent from the Court's opinion. It is my view that the opinion is legally incorrect on the first, and dispositive, issue it addresses and, furthermore, that the result the Court reaches is laden with consequences far beyond what the Court appears to recognize. Because I would affirm the District Court on this issue, I would not address other issues raised on appeal.

Boiled down to its essence, the issue before us is whether Valerie Wilson was "admitted to the practice of law," as that term is used in § 7-4-2701, MCA, while she was deemed to be practicing law under this Court's Student Practice Rule. The Court concludes that she was and, on that basis, reverses the District Court. I conclude that she was not and, therefore, would affirm the District Court's determination that she did not meet the statutory qualifications for appointment to the vacancy in the office of County Attorney for Jefferson County.

The phrase "admitted to the practice of law" is a term of art in legal circles. It is a different matter entirely from "practicing law" and the difference is clearly reflected in both statutes and Court orders and rules. The Court's opinion in this case rests entirely on our Student Practice Rule and the statutory definition of when a person is deemed to be practicing law. I do not disagree with the Court's citations to the language of these sources. Indeed, it is clear that, given the duties Ms. Wilson was authorized to perform under the supervision of an attorney admitted to the practice of law pursuant to our Student

Practice Rule, she was "deemed practicing law" under § 37-61-201, MCA.

I strenuously disagree, however, with the Court's quantum leap that "deemed practicing law" equates to "admitted to the practice of law." This leap in logic is unsupported by any language in the Student Practice Rule or § 37-61-201, MCA; indeed, it is expressly contradicted by language in the Student Practice Rule which provides that the Rule-required certification by the dean of the law school "remain[s] in effect until the expiration of twelve (12) months after it is filed, *or admission to the bar*, whichever occurs first." (Emphasis added.) More importantly, the Court's conclusion totally ignores the statutes and Court rules regulating "admission to the practice of law."

The statutes regarding admission of attorneys to the practice of law in Montana are found at Title 37, chapter 61, parts 1 and 2. Those statutes are clear that admitting an attorney to the practice of law is a formal action by this Court which can be taken only after requirements specified by statute and Court rule have been met.

Under § 37-61-101, MCA, this Court is authorized to establish rules for "the admission" of attorneys. Section 37-61-102, MCA, requires us to appoint an examining board to conduct the examination of "applicants for admission to the bar." Only those persons who, among other things, possess the necessary qualifications of learning and ability are "entitled to admission as attorney and counselor in all the courts of this state." Section 37-61-202, MCA.

The referenced qualifications for those seeking admission to the practice of law are set forth in both statute and this Court's Rules for Admission to the State Bar of Montana, the latter having been adopted effective January 17, 1991. *See In re the Rules for Admission to the Bar of the State of Montana* (Admission Rules). Those qualifications are, inter alia, graduation from an accredited law school, application for admission to the bar, taking and passing a "strict examination," and approval by this Court's Committee on Character and Fitness. *See* §§ 37-61-204 and 37-61-205, MCA; Admission Rules.

When these qualifications are met, this Court must "admit [the person] as an attorney ... and must direct an order to be entered to that effect upon its records, and that a certificate of such record be given to [the person] by the clerk of the court, which certificate is [the person's] license." Section 37-61-206, MCA. An oath to support the Constitutions of the United States and the State of Montana and to faithfully discharge the duties of an attorney must be taken "on [the person's] admission" and filed with the clerk of this Court. Section

37-61-207, MCA. The clerk is statutorily mandated to keep a roll of attorneys "admitted to practice," and the roll must be signed by "the person admitted" before the license can be issued. Section 37-61-209, MCA.

It is undisputed that Ms. Wilson had not met any of the statutory qualifications and requirements referenced immediately above at the time she began "practicing law" pursuant to our Student Practice Rule in June of 1990. At that time, she had completed the second of three years of law school; she was not "entitled" to admission to the practice of law pursuant to § 37-61-202, MCA, and, indeed, could not yet either apply for or take the "strict examination" required by § 37-61-204, MCA, and the Admission Rules. She had not been approved by this Court's Committee on Character and Fitness. *See* Admission Rules. Thus, Ms. Wilson had not been found qualified, upon examination, for admission; she was not approved for admission to the practice of law by this Court's Committee on Character and Fitness; she did not take the statutory oath, sign the clerk's rolls or receive a license admitting her to the practice of law. *See* §§ 37-61-206 and 37-61-207, MCA; Admission Rules.

I am astonished at the apparent ease with which the Court ignores this significant body of statute and its own 14 pages of Admission Rules on the subject of admission to the practice of law by simply "holding" that a law student who, under our Student Practice Rule, assists attorneys admitted to the practice is, herself or himself, admitted to the practice of law. When did these students apply for admission? When did they take and pass the bar examination? When were they approved by the Committee on Character and Fitness? When did they take the required oath to support the federal and state constitutions? When did they sign the roll? When did they receive their licenses as attorneys? The obvious answer is that such students have done none of these things and, as a result, they neither have been, nor could be, admitted to the practice of law in Montana.

I wonder what we are to do at this point, given the Court's decision in this case, with all those students operating under the Student Practice Rule. Even under the Court's incorrect result, no guidance is provided regarding how much "practice" under the Student Practice Rule is sufficient to automatically admit the student to the practice of law. Is involvement in one case, under the supervision of an attorney admitted to practice, enough? And, if the student is admitted to the practice of law by virtue of the Student Practice Rule, why is it necessary that he or she be supervised at all?

In any event, since the Court holds that these students are already admitted to the practice of law, apparently we must ensure that they are issued a license and enrolled in the State Bar of Montana, which is—by order of this Court—comprised of "all persons admitted to the practice of law in this state." *See* No. 12616, Supreme Court Order Creating The State Bar of Montana, dated January 29, 1974. I am confident that the students will be pleased to avoid the necessity of the otherwise upcoming and onerous bar examination upon their graduation from the University of Montana School of Law. I am equally confident that the number of students seeking to take clinical courses and provide other assistance to attorneys admitted to the practice of law will increase exponentially. Indeed, the State Bar of Montana may be glad to collect the obligatory dues from these heretofore unknown admittees to the practice of law.

But what of this Court's obligation to follow the law? And what of our obligation, discharged in the first instance via the statutes and Admission Rules, to take reasonable steps to ensure that the people of Montana are served by qualified attorneys of good moral character? Apparently these matters are of no interest or concern to the Court and it is well beyond my powers of reason to discern why.

To restate the obvious, I dissent in the most strenuous terms from the result reached on the first issue addressed in the Court's opinion. I would affirm the District Court's conclusions that Ms. Wilson was not admitted to the practice of law until October 8, 1991, and, on that basis, that she had not been admitted to the practice of law for the statutorily-required period of time when she was appointed to the vacancy in the office of the County Attorney of Jefferson County. The District Court correctly concluded that Ms. Wilson was not qualified to be appointed to the vacancy.

JUSTICE NELSON joins in the foregoing dissent of JUSTICE GRAY.